BYE, Circuit Judge,
concurring in part and dissenting in part.
I concur in the Court’s opinión with the exception of Section IV(A), which eliminates the jury’s finding and award of $30 million for lost goodwill. The Court vacates the award for such damages after concluding Marvin failed to quantify adequately the precise amount of its lost goodwill. I believe Marvin adequately proved this separate element while presenting its evidence on the damages sustained and would therefore affirm the award to include the loss of goodwill as determined by the jury, thus reflecting a basic human tendency to do business with a merchant who takes pride in its business reputation and who offers products of the type and quality which the customer desires and expects, and of a type which is separate and distinct from all other categories of business damages.
“Reputational damages are often difficult to quantify.” Porous Media Corp. v. Pall Corp., 173 F.3d 1109, 1122 n. 12 (8th Cir.1999). As a result, a plaintiff alleging lost goodwill “need not prove such damages with exacting precision.” Id. I believe the quality and quantity of evidence presented by Marvin in this extensive case was similar in nature to the quality and quantity of evidence found sufficient to support the jury’s award in Porous Media, see id. at 1122 (summarizing evidence of the loss of, and difficulty with, customers similar to the evidence presented by Marvin), with one exception. In Porous Media, a witness quantified the loss of goodwill by giving the jury a general estimate of the amount, “between $5 million and $10 million.” Id. Here, while Marvin present *925 ed persuasive and compelling evidence of substantial lost goodwill, no expert witness was specifically asked to gauge the amount.
Marvin’s evidence was, however, clearly sufficient to prove a loss of goodwill. The company’s principal officers established the importance of the company’s well-deserved reputation for manufacturing premium, high-quality products spanning a time period of several decades. For example, Susan Marvin testified “[w]hen [our customers] purchase Marvin, they purchase what they believe to be [ ] a premium product. It’s advertised as best of quality. It’s made to be best of quality [and] they have said, my home is important to me. I’m going to put the best in it.” App. 888-39. Jake Marvin testified to Marvin’s product as being a “high-end window” and a “premium product” frequently specified by architects for both new home construction as well as the replacement segment of their window business. App. 956. The jury repeatedly heard about how important it was to Marvin’s business plan, reputation, and success in the industry to stand behind all of its products, App. 516, 854, 602, a reputation which was confirmed by Marvin’s competitors, App. 498.
In addition, the jury heard detailed accounts of the problems Marvin encountered with its customers and the damage to its goodwill caused by the PILT problems, as summarized by the Court at page 913 of its opinion. The Court while not specifically alluding to it does describe how the jury learned about the PILT problems and the direct effects on Marvin’s cash reserves. In 1994, prior to the worst of the PILT problem, Marvin’s financial statements revealed cash and securities reserves in the amount of $75,880,369. App. 1320. By 1998, at the height of the PILT problem, Marvin’s cash and security reserves had shrunk by over $40 million to $34,989,949. Id. Marvin also presented evidence as to how this severe downturn in its cash reserves negatively impacted upon and affected its ability to obtain adequate financing so as to continue its detailed plan for complete business remediation. When Marvin approached a bank with a loan request of $125 million, the bank responded with only an offer of a $35 million loan. App. 979-81. It is upon such a basis and record as found here whereby lost goodwill, also known as reputational damages, are most often proved.
As stated previously, this court has already recognized that “[r]eputational damages are often difficult to quantify.” Porous Media Corp. v. Pall Corp., 173 F.3d 1109, 1122 n. 12 (8th Cir.1999). As a result, a plaintiff alleging lost goodwill “need not prove such damages with exacting precision.” Id. I believe the strength of evidence presented by Marvin in this case was equal to or exceeded the type of evidence found sufficient to support the jury’s award in Porous Media. See id. at 1122 (summarizing the evidence presented by the plaintiff to support an award of damages based on lost goodwill).
This court is in a far less favorable position than is either the district court, or more to the point, its petit jury, in the determination and/or adequacy of lost goodwill damages. Here, I would sustain the damages as found and determined by the jury, which were left intact by the district court as an important, distinct, necessary, and separate component of Marvin’s overall business damage and loss as established during the jury trial. I would therefore affirm the jury’s damage award in every respect.